**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
DELLA IFILL,                                                                Case No:

                 Plaintiff,                                      **COMPLAINT**

      -against-                                              **Jury Trial Demanded**

NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES,
LLP,  NAPOLI BERN RIPKA SHKOLNIK, LLP, NAPOLI
SHKOLNIK PLLC, BERN RIPKA LLP, PAUL J. NAPOLI,
HUNTER SHKOLNIK, MARC J. BERN, ALAN S. RIPKA
and GLORIA WERLE,

                Defendants.
-----------------------------------------------------------------------X

      Plaintiff, Della Ifill, by her attorneys, The Seltzer Law Group P.C., files this Complaint

against Defendants Napoli Bern Ripka Shkolnik & Associates, LLP, Napoli Bern Ripka

Shkolnik LLP, Napoli Shkolnik PLLC, Bern Ripka LLP, Paul J. Napoli, Hunter Shkolnik, Marc

J. Bern, Alan S. Ripka, and Gloria Werle (collectively, "Defendants"):

## <u>INTRODUCTION</u>

1.   Plaintiff commences this action pursuant to the American with Disabilities Act ("ADA"),

    42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §

    2611 *et seq.*, Article 15 of the New York State Executive Law § 296 *et seq.*, and New

    York City Administrative Code § 8-101 *et seq.* for disability discrimination, retaliation,

    and for failure to accommodate Plaintiff's disability.  Plaintiff seeks appropriate

    monetary relief, as well as appropriate equitable relief, to redress the wrongdoing

    complained of herein.

## <u>STATEMENT PURUANT TO LOCAL RULE 9</u>

2.   For purposes of complying with Local Rule 9, Plaintiff states that she has no corporate

    parent, subsidiary or affiliate, and that there are no other interested parties.

## JURISDICTION AND VENUE

3.   Plaintiff invokes this Court's jurisdiction pursuant to pursuant to 42 U.S.C. § 12101 *et seq.*, 29 U.S.C. § 2611 *et seq*., and 28 U.S.C. § 1331.

4.   This District has supplemental jurisdiction over Plaintiff's New York City and New York State claims pursuant to 28 U.S.C. § 1367(a).

5.   Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because the conduct giving rise to this action occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.   On November 12, 2015, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), which was assigned Charge No. 520-2016-00461.

7.   In said Charge of Discrimination, Plaintiff alleged that Defendants discriminated against her based upon her disability, failed to accommodate her disability, and that Defendants retaliated against her for engaging in protected activity by requesting an accommodation for her disability.

8.   On May 9, 2016, the EEOC issued a "Dismissal and Notice of Rights" to Plaintiff with reference to her Charge of Discrimination.

## PARTIES

9.   Plaintiff Della Ifill is a natural person residing in Kings County in the State of New York.

10.  Napoli Bern Ripka Shkolnik & Associates, LLP and Napoli Bern Ripka Shkolnik, LLP (hereinafter collectively referred to as "NBRS") are domestic limited liability partnerships.

11.  Napoli Shkolnik PLLC is a domestic professional service limited liability corporation.

12.  Bern Ripka LLP is a domestic limited liability partnership.

13.  Paul J. Napoli ("Mr. Napoli") is a natural person, who was a principal of NBRS at all relevant times and is a current principal of Napoli Shkolnik PLLC.

14.  Hunter Shkolnik ("Mr. Shkolnik") is a natural person, who was a principal of NBRS at all relevant times and is a current principal of Napoli Shkolnik PLLC.

15.  Marc J. Bern ("Mr. Bern") is a natural person, who was a principal of NBRS at all relevant times and is a current principal of Bern Ripka LLP.

16.  Alan S. Ripka ("Mr. Ripka") is a natural person, who was a principal of NBRS at all relevant times and is a current principal of Bern Ripka LLP.

17.  Gloria Werle ("Ms. Werle) is a natural person, who was Plaintiff's supervisor and manager at all relevant times.

## FACTS

18.  At all relevant times, NBRS operated as a plaintiffs' personal injury law firm with over fifty (50) employees.

19.  Upon information and belief, NBRS agreed to dissolve and are in the process of winding down.

20.  The law firms of Napoli Shkolnik PLLC and Bern Ripka LLP are a continuation of NBRS.

21.  Pursuant to a settlement agreement, the principals of NBRS agreed to dissolve the law firm into two separate law firms.

22.  Upon information and belief, NBRS's principals agreed to divide NBRS clients equally between Napoli Shkolnik PLLC and Bern Ripka LLP.

23. Upon information and belief, Napoli Shkolnik PLLC and Bern Ripka LLP split NBRS's approximately 30,000 clients equally, with each firm taking approximately 15,000 cases.

24. Upon information and belief, the principals of NBRS agreed to divide all existing and future NBRS assets equally between Napoli Shkolnik PLLC and Bern Ripka LLP.

25. Upon information and belief, because NBRS divided its assets between Napoli Shkolnik PLLC and Bern Ripka LLP, it is unable to provide Plaintiff with the relief requested herein.

26. Upon information and belief, NBRS's principals agreed to divide NBRS staff equally between Napoli Shkolnik PLLC and Bern Ripka LLP.

27. On approximately August 24, 2015, Mr. Napoli stated to Law360 that approximately thirty former NBRS attorneys work for Napoli Shkolnik PLLC.

28. On approximately August 24, 2015, Mr. Napoli stated to Law360 that approximately six former NBRS attorneys work for Bern Ripka LLP.

29. Former NBRS employees, including associates, paralegals and other support staff, work at Napoli Shkolnik PLLC under conditions substantially similar to their former conditions at NBRS.

30. Former NBRS employees, including associates, paralegals and other support staff, work at Bern Ripka LLP under conditions substantially similar to their former conditions at NBRS.

31. As of August 4, 2016, NBRS's website states that Napoli Shkolnik PLLC and Bern Ripka LLP "continue to represent Napoli Bern [NBRS] clients as Co-counsel or Trial Counsel."

32. Napoli Shkolnik PLLC uses substantially similar supervisory personnel as NBRS.

33. Mr. Napoli and Mr. Shkolnik, who were supervisors at NBRS, are now decision makers at Napoli Shkolnik PLLC.

34. Bern Ripka LLP uses substantially similar supervisory personnel as NBRS.

35. Mr. Bern, Mr. Ripka, and Ms. Werle, who were supervisors at NBRS, are now supervisors at Bern Ripka LLP.

36. Like NBRS, Napoli Shkolnik PLLC represents plaintiffs in mass tort and medical malpractice actions.

37. Like NBRS, Bern Ripka LLP represents plaintiffs in mass tort and medical malpractice actions.

38. Defendant NBRS employed Plaintiff as a receptionist for in excess of ten (10) years.

39. Defendant NBRS terminated Plaintiff's employment on September 9, 2015 via telephone call with Defendant Werle.

40. Plaintiff's duties as a receptionist included the following: receiving and routing incoming telephone calls, receiving and routing packages, managing availability of conference rooms, entering visitors and guests into the computerized security system, stuffing envelopes, administrative work related to deposition transcripts, and making photocopies.

41. During the last three to three and a half years of Plaintiff's employment, she supervised eight or nine other receptionists.

42. Plaintiff's supervisory work consisted of training new hires and coordinating the work schedules of the other receptionists.

43. Mr. Napoli exercised control over the terms and conditions of Plaintiff's employment.

44. Mr. Napoli had the power to hire and terminate Plaintiff.

45. Mr. Napoli determined Plaintiff's rates and methods of pay.

46. Mr. Napoli determined Plaintiff's work schedule.

47. Mr. Napoli supervised Plaintiff's work.

48. Mr. Napoli reviewed Plaintiff's work.

49. Mr. Napoli assigned Plaintiff work.

50. Mr. Shkolnik exercised control over the terms and conditions of Plaintiff's employment.

51. Mr. Shkolnik had the power to hire and terminate Plaintiff.

52. Mr. Shkolnik determined Plaintiff's rates and methods of pay.

53. Mr. Shkolnik determined Plaintiff's work schedule.

54. Mr. Shkolnik supervised Plaintiff's work.

55. Mr. Shkolnik reviewed Plaintiff's work.

56. Mr. Shkolnik assigned Plaintiff work.

57. Mr. Bern exercised control over the terms and conditions of Plaintiff's employment.

58. Mr. Bern had the power to hire and terminate Plaintiff.

59. Mr. Bern determined Plaintiff's rates and methods of pay.

60. Mr. Bern determined Plaintiff's work schedule.

61. Mr. Bern supervised Plaintiff's work.

62. Mr. Bern reviewed Plaintiff's work.

63. Mr. Bern assigned Plaintiff work.

64. Mr. Ripka exercised control over the terms and conditions of Plaintiff's employment.

65. Mr. Ripka had the power to hire and terminate Plaintiff.

66. Mr. Ripka determined Plaintiff's rates and methods of pay.

67. Mr. Ripka determined Plaintiff's work schedule.

68. Mr. Ripka supervised Plaintiff's work.

69. Mr. Ripka reviewed Plaintiff's work.

70. Mr. Ripka assigned Plaintiff work.

71. Ms. Werle exercised control over the terms and conditions of Plaintiff's employment.

72. Ms. Werle had the power to hire and terminate Plaintiff.

73. Ms. Werle determined Plaintiff's rates and methods of pay.

74. Ms. Werle determined Plaintiff's work schedule.

75. Ms. Werle supervised Plaintiff's work.

76. Ms. Werle reviewed Plaintiff's work.

77. Ms. Werle assigned Plaintiff work.

78. In or about March 2015, Plaintiff was diagnosed with multiple myeloma, a type of cancer.

79. In or about April or May 2015, Mr. Bern, during several private telephone conferences that occurred while Plaintiff was off duty from work, invited Plaintiff to join him as an employee of a new law firm that he would be forming with Mr. Ripka.

80. In August 2015, Plaintiff notified Defendants of her cancer diagnosis.

81. Plaintiff informed Mr. Bern, in August 2015, that she was diagnosed with cancer, during one of the aforementioned private conversations.

82. In August 2015, Plaintiff informed Ms. Werle and Ms. Werle's assistant, Natasha Barrett ("Ms. Barrett"), that she was diagnosed with cancer.

83. Plaintiff informed Ms. Werle and Ms. Barrett that she would need to take time off to undergo chemotherapy.

84. In August 2015, Plaintiff asked Mr. Bern if the Defendants could accommodate her disability.

85. Plaintiff requested permission to work from home one day each week once she learned her cancer treatment schedule.

86. Plaintiff explained that she would need to work from home on the days that she received chemotherapy.

87. Mr. Bern advised Plaintiff that he needed to discuss her accommodation request with Ms. Werle.

88. Plaintiff made arrangements with the Defendants to take approved time off from work from August 25, 2015 through September 17, 2015.

89. Plaintiff needed this time off to organize her apartment and affairs before starting chemotherapy.

90. On September 9, 2015, while Plaintiff was on approved vacation, Ms. Werle, NBRS's Director of Operations, informed Plaintiff, during a telephone call, that Defendants were terminating Plaintiff's employment.

91. Defendants thereby terminated Plaintiff's employment on September 9, 2016.

92. During the aforementioned telephone call, Ms. Werle specifically advised Plaintiff that her job performance was not the reason for her termination.

93. At no time during Plaintiff's lengthy employment with Defendants did anyone notify Plaintiff of any complaints or criticisms about her job performance.

94. At all times during her employment with Defendants, Plaintiff's performance was excellent.

95. Ms. Werle stated that Defendants were terminating Plaintiff because they were eliminating her position.

96.  Ms. Werle told Plaintiff that the termination should not surprise her, as Defendants advised employees in the autumn of 2014 that NBRS's partners were disbanding the firm and would form new firms.

97.  NBRS, however, continues to operate its businesses through Napoli Shkolnik PLLC and Bern Ripka LLP named as Defendants herein.

98.  Defendants never informed Plaintiff of a particular date on which NBRS would cease operations, dissolve, disband or otherwise discontinue business operations.

99.  Upon receiving notification of her termination, Plaintiff placed several telephone calls, sent emails and text messages to Mr. Bern.

100.  Despite her efforts to reach him, Mr. Bern did not respond.

101.  Plaintiff had previously taken intermittent leave time from work pursuant to FMLA. Plaintiff took this leave, pursuant to FMLA, so that she could care for her ailing mother.

102.  Plaintiff took such leave, pursuant to FMLA, beginning on June 23, 2014.

103.  As part of Plaintiff's FMLA leave, she took certain days off from work and worked an adjusted schedule on other days.

104.  In or about May 2015, Plaintiff forwarded executed FMLA paperwork to Defendant Werle to renew her FMLA leave to care for her mother.

105.   Natasha Barrett, at the direction of Defendant Werle, had previously requested that Plaintiff submit new FMLA paperwork in order to renew her FMLA leave.

106.  Plaintiff's FMLA leave to care for her mother was renewed, effective June 23, 2015, and has not been exhausted.

107.  Upon information and belief, Plaintiff had approximately two months of unused FMLA leave at the time of her termination.

108. Despite specifically requesting that Plaintiff submit paperwork to renew her FMLA leave and possessing knowledge that Plaintiff had not exhausted her leave time at the time of her termination, Defendants knowingly and willfully terminated Plaintiff's employment.

109. Defendants have allowed other employees, who were similarly situated to Plaintiff, to work from home.

110. Upon information and belief, other employees who worked from home did not have cancer.

111. Upon information and belief, other employees who worked from home did not request a disability accommodation.

112. A former receptionist answered telephone calls from her home five days per week for a period of one to two years.

113. In addition, multiple employees, whose positions required them to engage in extensive telephone work, were permitted by Defendants to work from home.

114. Defendants never experienced operational difficulties resulting from administrative staff performing their duties, including telephone related work, from home.

115. Further, Plaintiff only requested to work from home one day per week, once she learned her chemotherapy schedule, so that she could undergo treatment.

116. Rather than engage in a dialogue about reasonably accommodating Plaintiff's disability, Defendants terminated her employment on September 9, 2015, only one month after she communicated her request for a reasonable accommodation for her disability.

117. Plaintiff did not know her exact chemotherapy schedule at the time of her termination.

118. Plaintiff later learned that her chemotherapy schedule would require her to undergo treatment on Mondays from 10:30 a.m. to 12:30 p.m.

119. Accordingly, had Defendants abided by the law and engaged in the requisite interactive process, they could reasonably have accommodated Plaintiff by allowing her to work from home on Mondays during the portion of the day that she was not receiving treatment.

120. Plaintiff was also willing to work additional hours on Tuesdays through Fridays to compensate for the time spent in chemotherapy, if needed.

121. The Defendants previously allowed Plaintiff to make similar adjustments to her schedule, under FMLA, to care for her ailing mother.

122. Defendants never informed Plaintiff that these adjustments detracted from NBRS's ability to operate.

123. Defendants advanced a pretextual explanation for Plaintiff's termination.

124. Ms. Werle advised Plaintiff that the Defendant was eliminating her position.

125. However, subsequent to Plaintiff's termination, another receptionist informed Plaintiff that Defendants continued to employ her.

126. Upon information and belief, this receptionist did not have cancer.

127. Upon information and belief, this receptionist never requested a disability accommodation.

128. Under information and belief, this receptionist did not take, or request, time off pursuant to FMLA.

129. In addition, Defendants had allowed multiple other employees, whose positions required them to make telephone calls, to work from home.

130. Upon information and belief, these employees did not have cancer.

131. Upon, information and belief, these employees never requested a disability accommodation.

132. Upon information and belief, these employees did not take, or formally request, time off pursuant to FMLA.

133. As such, the Defendants have not eliminated Plaintiff's position and have articulated a false reason for her termination.

## FIRST CAUSE OF ACTION
### *(Failure to Accommodate Under the ADA)*

134. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "133" as though fully set forth at length herein.

135. Defendants are employers subject to the ADA and all amendments thereto.

136. At all relevant times, NBRS was an employer with more than fifteen employees.

137. Napoli Shkolnik PLLC is an employer with more than fifteen employees.

138. Bern Ripka LLP is an employer with more than fifteen employees.

139. Plaintiff suffers from multiple myeloma, a type of cancer, which is a protected disability under the ADA and all amendments thereto.

140. Multiple myeloma is a cancer formed by malignant plasma cells.

141. Plaintiff's cancer causes her to become anemic.

142. Plaintiff's anemia causes her to become pale, weak, and fatigued.

143. Plaintiff's cancer substantially limits her major life activities.

144. Plaintiff's cancer makes it difficult for her to sleep.

145. Plaintiff's cancer makes it difficult for her to eat.

146. Plaintiff's cancer makes it difficult for her to fight off infections.

147. Plaintiff can perform the essential functions of her job either with or without a reasonable accommodation.

148. Plaintiff made a request for a reasonable accommodation on account of her disability.

149. Plaintiff requested a schedule where she would from home one day each week once she learned her cancer treatment schedule.

150. Plaintiff explained that she would need to work from home on the days she received chemotherapy.

151. Defendants allowed other employees, including a receptionist, whose positions required them to make telephone calls, to work from home, which demonstrates that Plaintiff's accommodation request was reasonable.

152. Defendants nevertheless denied Plaintiff's accommodation request.

153. Defendants failed to even suggest an alternative accommodation.

154. By their actions, Defendants and their agents have failed to reasonably accommodate Plaintiff, which constitutes an unlawful employment practice on account of Plaintiff's disabilities in violation of the American with Disabilities Act, including all amendments thereto.

155. This unlawful conduct occurred through the termination of Plaintiff's employment on September 9, 2015.

156. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the American with Disabilities Act, including all amendments thereto.

157. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their deliberate actions.

158. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

159. Plaintiff has suffered loss of economic benefits, salary and employment prospects.

160. Plaintiff has also been damaged physically and emotionally, including humiliation, loss of self-esteem, and has been otherwise damaged.

161. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## SECOND CAUSE OF ACTION
*(Failure to Accommodate Under the New York State*
*and the New York City Human Rights Laws)*

162. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "161" as though fully set forth at length herein.

163. Plaintiff suffers from multiple myeloma, a type of cancer, which is a protected disability under the New York City Human Rights Law and New York State Human Rights Law and all amendments thereto.

164. Plaintiff's cancer is an impairment of her normal bodily function.

165. Multiple myeloma is a cancer formed by malignant plasma cells.

166. Plaintiff's cancer causes Plaintiff to become anemic.

167. Plaintiff's anemia causes her to become pale, weak, and fatigued.

168. Plaintiff's cancer substantially limits her major life activities.

169. Plaintiff's cancer makes it difficult for her to sleep.

170. Plaintiff's cancer makes it difficult for her to eat.

171. Plaintiff's cancer makes it difficult for her to fight off infections.

172. Plaintiff can perform the essential functions of her job either with or without a reasonable accommodation.

173. Plaintiff's medical condition qualifies as a protected disability under the New York State and City Human Rights Law because she suffers from a physical, mental or medical impairment, has a record of such impairment and/or has a condition that others perceive him as being so impaired.

174. Plaintiff made a request for a reasonable accommodation on account of her disability.

175. Plaintiff requested a schedule where she would from home one day each week once she learned her cancer treatment schedule.

176. Plaintiff explained that she would need to work from home on the days that she received chemotherapy.

177. Defendants allowed other employees, including a receptionist, whose positions required them to make telephone calls, to work from home, which demonstrates that Plaintiff's accommodation request was reasonable.

178. Defendants failed to even suggest an alternative accommodation.

179. By their actions, Defendants and their agents have failed to reasonably accommodate Plaintiff, constituting an unlawful employment practice on account of Plaintiff's disabilities in violation of Article 15 of the New York State Executive Law § 296 and § 297, the New York City Human Rights Law and the New York City Administrative Code § 8-101 *et seq.*

180. This unlawful conduct occurred through the termination of Plaintiff's employment on September 9, 2015.

181. These discriminatory and retaliatory acts occurred and had an impact within New York City.

182. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under Article 15 of the New York State Executive Law § 296 and § 297, the New York City Human Rights Law and the New York City Administrative Code § 8-101 *et seq.*

183. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

184. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

185. Plaintiff has suffered loss of economic benefits, salary and employment prospects. Plaintiff has also been damaged physically and emotionally, in addition to humiliation, loss of self-esteem and has been otherwise damaged.

186. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## **THIRD CAUSE OF ACTION**
*(Retaliation Under the ADA)*

187. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "186" as though fully set forth at length herein.

16

188. The foregoing actions by Defendants and their agents violate the American with Disabilities Act, including all amendments thereto, in that Defendants and their agents retaliated against Plaintiff because she requested a reasonable accommodation for her disability.

189. In August 2015, Plaintiff notified Defendants of her cancer diagnosis.

190. In August 2015, Plaintiff informed Defendant Ms. Werle and Ms. Barrett that she would need to take time off to undergo chemotherapy.

191. Plaintiff also informed Mr. Bern in August 2015 that she was diagnosed with cancer.

192. In August 2015, Plaintiff asked Mr. Bern if the Defendant could accommodate her disability.

193. Plaintiff's request for a reasonable accommodation is a protected activity under the ADA.

194. Defendants terminated Plaintiff's employment on September 9, 2015, which was shortly after she requested that Defendants reasonably accommodate her disability.

195. Defendants would not have terminated Plaintiff's employment "but for" her protected activity.

196. Defendants allowed other employees, including a receptionist, whose positions required them to make telephone calls, to work from home, which demonstrates that Plaintiff's accommodation request was reasonable.

197. Defendants provided a false reason for Plaintiff's termination.

198. Ms. Werle falsely told Plaintiff that Defendants were terminating her because they were eliminating her position.

199. NBRS, however, continued to employ receptionists after Plaintiff's termination.

200. Ms. Werle told Plaintiff that the termination should not surprise her, as Defendants advised employees in the autumn of 2014 that NBRS's partners were disbanding the firm and forming new firms.

201. NBRS, however, continues to operate its business through Defendant Napoli Shkolnik PLLC and Defendant Bern Ripka LLP.

202. Defendants Napoli Shkolnik PLLC and Bern Ripka LLP, upon information and belief, continue to employ receptionists.

203. By their actions, Defendants and their agents treated Plaintiff differently from other employees in retaliation against her in compensation, terms, conditions and privileges of employment including, but not limited to, terminating her employment in violation of the American with Disabilities Act, 42 U.S.C. § 12203.

204. This unlawful conduct occurred through Plaintiff's termination on September 9, 2015.

205. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the American with Disabilities Act, 42 U.S.C. § 12203.

206. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

207. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

208. Plaintiff has suffered loss of economic benefits, salary and employment prospects.

209. Plaintiff has also been damaged physically and emotionally, including humiliation and loss of self-esteem, and has been otherwise damaged.

210. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## FOURTH CAUSE OF ACTION
*(Disability Discrimination Under the ADA)*

211. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "210" as though fully set forth at length herein.

212. The foregoing actions by Defendants and their agents violate the American with Disabilities Act, including all amendments thereto, in that Defendants and their agents discriminated against Plaintiff because of her protected disability.

213. In August 2015, Plaintiff notified Defendants of her cancer diagnosis.

214. In August 2015, Plaintiff informed Ms. Werle and her assistant, Ms. Barrett, that she was diagnosed with cancer.

215. Defendants terminated Plaintiff on September 9, 2015, shortly after she disclosed her cancer to Defendants in August 2015.

216. Defendants would not have terminated Plaintiff's employment "but for" her disability.

217. Defendants allowed other employees, including a receptionist, whose positions required them to make telephone calls, to work from home, which demonstrates that Plaintiff's accommodation request was reasonable.

218. Defendants provided a false reason for Plaintiff's termination.

219. Ms. Werle told Plaintiff that Defendants were terminating her because they were eliminating her position.

220. NBRS, however, continued to employ receptionists after Plaintiff's termination.

221. Ms. Werle told Plaintiff that the termination should not surprise her, as Defendants advised employees in the autumn of 2014 that NBRS's partners were disbanding the firm and would form new firms.

222. NBRS, however, continues to operate its businesses through Napoli Shkolnik PLLC and Bern Ripka LLP, named as Defendants herein.

223. Defendants Napoli Shkolnik PLLC and Bern Ripka LLP, upon information and belief, continue to employ receptionists.

224. This unlawful conduct occurred through Plaintiff's termination on September 9, 2015.

225. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the American with Disabilities Act, 42 U.S.C. § 12203.

226. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

227. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

228. Plaintiff has suffered loss of economic benefits, salary and employment prospects.

229. Plaintiff has also been damaged physically and emotionally, in addition to humiliation, loss of self-esteem and has been otherwise damaged.

230. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to

be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## FIFTH CAUSE OF ACTION

*(Disability Discrimination and Retaliation Under the New York State*
*and the New York City Human Rights Law)*

231. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "230" as though fully set forth at length herein.

232. The foregoing actions by Defendants and their agents violate the New York State Executive Law § 296 and § 297, the New York City Human Rights Law and the New York City Administrative Code § 8-101 *et seq.* in that Defendants and their agents retaliated and discriminated against plaintiff because of her protected disability and because plaintiff opposed conduct prohibited by the state and city anti-discrimination statutes.

233. In August 2015, Plaintiff notified Defendants of her cancer diagnosis.

234. In August 2015, Plaintiff informed Ms. Werle and her assistant, Ms. Barrett, that she was diagnosed with cancer.

235. Plaintiff informed Ms. Werle and Ms. Barrett that she would need to take time off to undergo chemotherapy.

236. Plaintiff also informed Mr. Bern in August 2015 that she was diagnosed with cancer.

237. In August 2015, Plaintiff asked Mr. Bern if the Defendant could accommodate her disability.

238. Defendants terminated Plaintiff on September 9, 2015, shortly after she informed Defendants of her cancer diagnosis in August 2015.

239. Defendants terminated Plaintiff's employment shortly after she requested that Defendants reasonably accommodate her disability.

240. Defendants provided a false reason for Plaintiff's termination.

241. Ms. Werle told Plaintiff that Defendants were terminating her because they were eliminating her position.

242. Ms. Werle told Plaintiff that the termination should not surprise her, as Defendants advised employees in the autumn of 2014 that NBRS's partners were disbanding the firm and forming new firms.

243. NBRS, however, continued to employ receptionists after Plaintiff's termination.

244. NBRS, however, continues to operate its businesses through Napoli Shkolnik PLLC and Bern Ripka LLP, named as Defendants herein.

245. Defendants Napoli Shkolnik PLLC and Bern Ripka LLP, upon information and belief, continue to employ receptionists.

246. Defendants allowed other employees, including a receptionist, whose positions required them to make telephone calls, to work from home, which demonstrates that Plaintiff's accommodation request was reasonable.

247. Based upon the foregoing, Plaintiff's disability and her protected activity were "motivating factors" for her termination in violation of the New York City Human Rights Law.

248. Based upon the foregoing, Plaintiff's disability and her protected activity were the "but for" causes of her termination in violation of the New York State Executive Law § 296 and § 297.

249. Defendants' discriminatory and retaliatory acts occurred and had an impact within New York City.

250. This unlawful conduct occurred through plaintiff's termination on September 9, 2015.

251. By their actions, Defendants and their agents treated Plaintiff differently from other employees on account of retaliation and reprisal and discriminated against her in compensation, terms, conditions and privileges of employment including, but not limited to, terminating Plaintiff's employment in violation of Article 15 of the New York State Executive Law § 296 and § 297, the New York City Human Rights Law and New York City Administrative Code § 8-101 *et seq.*

252. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under Article 15 of the New York State Executive Law § 296 and § 297 and the New York City Human Rights Law, New York City Administrative Code § 8-101 *et seq.*

253. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

254. By reason of Defendant's actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

255. Plaintiff has suffered loss of economic benefits, salary and employment prospects.

256. Plaintiff has also been damaged physically and emotionally, in addition to humiliation, loss of self-esteem and has been otherwise damaged.

257. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to

be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## SIXTH CAUSE OF ACTION
*(Retaliation Under the Family and Medical Leave Act)*

258. Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs "1" through "257" as though fully set forth at length herein.

259. The foregoing actions by Defendants and their agents violate the Family and Medical Leave Act, including all amendments thereto, in that Defendants and their agents retaliated against Plaintiff because she requested leave under the Family and Medical Leave Act.

260. Plaintiff took leave, pursuant to FMLA, so that she could care for her ailing mother.

261. As part of Plaintiff's FMLA leave, she took certain days off from work and worked an adjusted schedule on other days.

262. Further, Plaintiff's FMLA leave to care for her mother was renewed, effective June 23, 2015, and was not exhausted.

263. Plaintiff had approximately two months of unused FMLA leave at the time of her termination.

264. Defendants willfully terminated Plaintiff's employment on September 9, 2015 despite their knowledge that Plaintiff had unused leave available to her under the Family and Medical Leave Act.

265. By their actions, Defendants and their agents treated Plaintiff differently from other employees in retaliation against her in compensation, terms, conditions and privileges of employment including, but not limited to, terminating her employment in violation of the Family and Medical Leave Act, 29 U.S.C.A. § 2611 *et seq.*

266. This unlawful conduct occurred through Plaintiff's termination on September 9, 2015.

267. Defendants would not have terminated Plaintiff's employment "but for" her request for leave under FMLA.

268. Defendants and their agents cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein, nor can their actions be otherwise justified under the Family and Medical Leave Act, 29 U.S.C.A. § 2611 *et seq*.

269. Any alleged non-discriminatory reason is nothing more than a pretext so that Defendants and their agents could attempt to mask their actions.

270. Defendants have advanced a pretextual explanation for her termination.

271. Ms. Werle advised Plaintiff that the Defendants were eliminating her position.

272. However, subsequent to Plaintiff's termination, another receptionist informed Plaintiff that Defendants continued to employ her.

273. As such, the Defendants have not eliminated Plaintiff's position and have articulated a false reason for her termination.

274. By reason of Defendants' actions and inactions, whereby Defendants and their agents have engaged in unlawful discriminatory practices, Plaintiff has been severely damaged.

275. Plaintiff has suffered loss of economic benefits, salary and employment prospects.

276. Plaintiff has also been damaged physically and emotionally, including humiliation and loss of self-esteem, and has been otherwise damaged.

277. Because of the actions complained of, Plaintiff has become entitled to appropriate injunctive and monetary relief, including reinstatement, an expungement of all discriminatory motivated records, compensatory and punitive damages in an amount to

be determined at trial, together with appropriate interest thereon, and an award of attorneys' fees, expert fees, costs and disbursements.

## JURY DEMAND

278. Plaintiff herein demands a trial by jury of all issues in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that he be awarded the following relief:

a. On the first cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

b. On the second cause of action, appropriate injunctive and monetary relief, including an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

c. On the third cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

d. On the fourth cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

e.  On the fifth cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

f.  On the sixth cause of action, appropriate injunctive and monetary relief, including reinstatement; an expungement of all discriminatory motivated records; compensatory and punitive damages in an amount to be determined at trial, together with appropriate interest thereon;

g.  With respect to all causes of action, an award of attorney's fees, expert fees, costs and disbursements; and

h.  Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        August 4, 2016

Respectfully submitted,

**THE SELTZER LAW GROUP P.C.**

By: _____

Steven Seltzer
Paul J. Sagar
*Counsel for Plaintiff*
11  Broadway, Suite 615
New York, New York 10004
(646) 863-1909